# EXHIBIT A

SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR KING COUNTY

| | | |
|---|---|---|
| KUMROON MAKSIRISOMBAT and LAWRENCE BULLOCK, | ) ) ) | NO. 18-2-00366-1 SEA |
| Plaintiffs, | ) ) ) | COMPLAINT |
| v. | ) ) | |
| SEATTLE PUBLIC SCHOOLS, a municipal corporation, | ) ) ) | |
| Defendant. | ) | |

COME NOW the Plaintiffs Kumroon Maksirisombat and Lawrence Bullock, by and through their attorneys of record, Cross Border Law Corporation, and allege the following:

**I.     PARTIES**

1.1     Plaintiff Kumroon Maksirisombat is and has been, at all times relevant to this action, a resident of the State of Washington.

1.2     Plaintiff Lawrence Bullock is and has been, at all times relevant to this action, a resident of the State of Washington.

COMPLAINT - 1

CROSS BORDER LAW
3214 West McGraw Street – Suite 300
Seattle, Washington 98199
206.858.9990

1.3     At all times relevant to this action, Mr. Bullock and Dr. Maksirisombat were over 40-years old and members of a protected class under the Washington State Law Against Discrimination, RCW 49.60 *et seq*., and the Age Discrimination in Employment Act of 1967, 29 USC §§ 621-34.

1.4     Defendant Seattle Public Schools is and has been, at all times relevant to this action, a local governmental entity within the meaning of RCW 4.96.010(2) and has maintained and operated Chief Sealth High School, a secondary school located at 2600 SW Thistle St, Seattle, WA 98126.

## II.     JURISDICTION AND VENUE

2.1     Jurisdiction over Defendant Seattle Public Schools lies pursuant to RCW 4.96.010(1) and 4.28.185(1)(b) by virtue of the tortious conduct of Defendant and/or Defendant's past or present officers, employees, or volunteers which occurred within the State of Washington.

2.2     Venue for this action lies in the Seattle Assignment Area of King County pursuant to RCW 4.12.020 and KCLCR 82(e)(4)(A)(iv), as the events giving rise to this complaint occurred in Seattle, King County.

## III.     FACTS

3.1     Dr. Maksirisombat began working for Seattle Public Schools in 1986.  After leaving in 1998 to work for Federal Way and Renton School Districts, he returned to Seattle Public Schools in 2011.

3.2     Throughout his career prior to the 2014-15 school year, Dr. Maksirisombat has been rated extremely high in his performance evaluations.

3.3     Mr. Bullock began working for Seattle Public Schools in 2014.

3.4     Mr. Bullock assisted Dr. Maksirisombat in instructing a special education "Service Model 2" (SM2) class at Chief Seatlh High School.

3.5     SM2 classes typically have eight students per class, with a maximum of ten students per class.

3.6     Beginning in the winter quarter, by order of by Principal Aida Fraser-Hammer and Vice Principal Andra Maughan, Dr. Maksirisombat was forced to absorb ten additional students into his already full-capacity SM2 class when another special education teacher left Chief Sealth in December 2014.

3.7     Dr. Maksirisombat complained to the Seattle Education Association, the union which represents the educational staff from Seattle Public Schools, that he was being unfairly treated by the Principal and Vice Principal because the addition of the extra students and additional instructional assistants, who should have been spread out among other special education teachers at Chief Sealth, was making his job exponentially harder and without added compensation.

3.8     Dr. Maksirisombat's complaint to the Seattle Education Association went unresolved and he continued to teach an extremely over-full class of eighteen special education students.

3.9     On or about Thursday, May 7, 2015, Dr. Maksirisombat and Mr. Bullock were instructing their special education class in the gymnasium at Chief Sealth High School.

3.10    The class was regularly in the gymnasium during 6th period on Thursday afternoons.

3.11    Despite knowing that Dr. Maksirisombat's class was dangerously oversized, Vice Principal Maughan instructed that Student A,[1] a special education student who required a one-on-one instructor due to violent behavior, be dropped off in the gymnasium to join in with Dr.

COMPLAINT - 3

Maksirisombat's special education class and that the one-on-one instructor assigned to Student A assist in another classroom.

3.12   Student A was extremely agitated before being dropped off and soon began exhibiting aggressive and assaultive behavior aimed at the other students as well as Mr. Bullock and Dr. Maksirisombat.

3.13   After attempts to calm Student A proved ineffective, Student A began to assault Dr. Maksirisombat.

3.14   Dr. Maksirisombat and Mr. Bullock then used reasonably necessary force to restrain Student A and prevent Student A from causing further harm to himself or others.

3.15   Dr. Maksirisombat and Mr. Bullock were successful in restraining and ultimately calming Student A before security arrived.

3.16   Dr. Maksirisombat and Mr. Bullock were then treated at Highline Medical Center for injuries inflicted by Student A.

3.17   Following this incident, Principal Fraser-Hammer levelled allegations against Mr. Bullock and Dr. Maksirisombat that they had engaged in inappropriate physical contact with Student A.

3.18   On or about Sunday, May 10, 2015, Seattle Public Schools Human Relations placed Mr. Bullock and Dr. Maksirisombat on administrative leave based on Principal Fraser-Hammer's accusations.

//

---

[1] The true name of Student A is known to plaintiffs but is withheld to protect the identity of Student A.

3.19     Mr. Bullock and Dr. Maksirisombat remained on administrative leave until they were reinstated in the beginning of 2016.

3.20     Mr. Bullock participated in a *Loudermill* hearing on August 6, 2015.  At the hearing, Mr. Bullock responded to Principal Fraser-Hammer's allegations and gave a statement regarding the events of May 7, 2015, Student A's history of violence, and the conduct of both Principal Fraser-Hammer and Vice Principal Maughan which precipitated the incident.

3.21     Dr. Maksirisombat's *Loudermill* hearing was re-scheduled multiple times until it was ultimately cancelled.  As such, Dr. Maksirisombat has never had the opportunity to officially respond to Principal Fraser-Hammer's allegations.

3.22     On January 9, 2016, Mr. Bullock and Dr. Maksirisombat were notified that Seattle Public Schools was recommending that both be suspended without pay for one day.

3.23     On April 20, 2016, still without being granted an opportunity for Dr. Maksirisombat to be heard, that recommendation was rescinded and Mr. Bullock and Dr. Maksirisombat were ordered to attend Crisis Prevention Institute training.

3.24     Throughout the months of their administrative leave, both Dr. Maksirisombat and Mr. Bullock cooperated with the school district investigation into the incident.

3.25     Dr. Maksirisombat and Mr. Bullock also reported the violations of SM2 protocols and the hostility they faced from the Principal and Vice Principal to the human resources investigator and to the Seattle Education Association representative.

3.26     The school district took no action to correct the problems at Chief Sealth and ordered Mr. Bullock and Dr. Maksirisombat to report back to work in 2016 under the same conditions, save that Vice Principal Maughan had been promoted to be Principal at another school.

3.27     After returning to the classroom in 2016, Mr. Bullock was demoted from his role as a classroom Special Education Assistant to that of tutoring a selection of the most difficult special needs students with behavioral disorders, hand-picked by Principal Fraser-Hammer, in subjects he had not been trained to teach.

3.28     Principal Fraser-Hammer additionally took to following Mr. Bullock around the school and berating him in front of other educators.

3.29     Dr. Maksirisombat was also demoted to being a substitute teacher and was also required by Principal Fraser-Hammer to teach classes for which he was not hired by Seattle Public Schools to teach.

3.30     After returning to work, Dr. Maksirisombat was also called into several meetings with Principal Fraser-Hammer where she repeatedly insisted that he should leave the school and retire.

3.31     Additionally, following their return, the performance evaluations prepared on Dr. Maksirisombat and Mr. Bullock by Principal Fraser-Hammer became decidedly unfavorable and no longer reflected the two educators' proven fine abilities.

3.32     Principal Fraser-Hammer's conduct took such a toll on Dr. Maksirisombat that he was forced to take medical leave from February to May 2016.

3.33     As the 2016-17 school year approached, the new Vice Principal at Chief Sealth, Clint Salee, ordered Dr. Maksirisombat to pack up and move his classroom five times in the span of twenty days.

3.34	On September 1, Dr. Maksirisombat came in on his day off to move only to be told to move into a room with another teacher, Bill Easter, who would also be teaching a completely different subject at the same time.

3.35	On September 6, Dr. Maksirisombat was again moved into a room where another teacher, Marlene Allbright, was already teaching a completely different subject at the same time.

3.36	The third, fourth, and fifth moves were ordered on September 9, 15, and 21, respectively. Those moves were to the closet in the main office, to room 220, and finally back to Marlene Allbright's classroom.

3.37	In addition to being forced to move classrooms every few days, Dr. Maksirisombat was also subjected to further embarrassment from Principal Fraser-Hammer as she was following him around the school, coming in to Dr. Maksirisombat's classroom three or four times every day and interrupting the lesson under the guise of investigating what Dr. Maksirisombat was teaching, and even searching out Dr. Maksirisombat and Mr. Bullock at lunch time to prevent them from eating lunch together.

3.38	Ultimately, Dr. Maksirisombat and Mr. Bullock could no longer stand the harassment and they were forced to leave Chief Sealth High School.

3.39	On March 1, 2016, Mr. Bullock and Dr. Maksirisombat each filed a complaint for discrimination and retaliation with the U.S. Equal Employment Opportunity Commission.

3.40	A notice of right to sue under the Age Discrimination in Employment Act of 1967 was received by both Mr. Bullock and Dr. Maksirisombat on October 6, 2017.

3.41	On October 26, 2017, Mr. Bullock and Dr. Maksirisombat each filed an RCW 4.96.020 Claim for Damages.

## IV. FIRST CAUSE OF ACTION: AGE DISCRIMINATION

4.1 Through the actions described above, Seattle Public Schools and/or its past or present officers, employees, or volunteers unlawfully discriminated against Dr. Maksirisombat and Mr. Bullock based on their age.

4.2 The particulars of the discrimination leveled at plaintiffs includes, but is not limited to:

    a. unlawful constructive discharge in contravention of RCW 49.60.180(2) and 29 USC § 623(a)(1);

    b. unlawful discrimination in contravention of RCW 49.60.180(3) and 49.44.090(1) and 29 USC § 623(a)(1); and

    c. unlawfully aiding in the discrimination against plaintiffs in contravention of RCW 49.60.220.

## V. SECOND CAUSE OF ACTION: RETALIATION

5.1 Through the actions described above, Seattle Public Schools and/or its past or present officers, employees, or volunteers unlawfully retaliated against Dr. Maksirisombat and Mr. Bullock

5.2 The particulars of the retaliation leveled against Dr. Maksirisombat and Mr. Bullock includes, but is not limited to:

    a. unlawfully discriminating against, demoting, and harassing Dr. Maksirisombat and Mr. Bullock because they openly opposed actions they reasonably believed to be discrimination on the basis of age in contravention of RCW 49.60.220(1) and 29 USC § 623(d); and

      b.    unlawfully discriminating against, demoting, and harassing Dr. Maksirisombat and Mr. Bullock because they reported actions they reasonably believed to be discrimination on the basis of age to the United States Equal Employment Opportunity Commission and the Washington State Human Rights Commission in contravention of RCW 49.60.220(2) and 29 USC § 623(d).

## VI.   RESERVATION OF RIGHTS

6.1    Further particulars of the tortious conduct of Seattle Public Schools and/or its past or present officers, employees, or volunteers are likely to become evident through the discovery process, and the Plaintiffs reserve the right to amend this Complaint and/or to present further allegations of discriminatory actions consistent with the evidence to the fullest extent permitted under Washington law.

## VII.   DAMAGES

7.1    As a direct and proximate result of the tortious conduct of the named Defendant and/or its past or present officers, employees, or volunteers, the Plaintiffs suffered elements of compensable damage including, but not limited to:

      a.    lost wages and earnings—past, present and future; and

      b.    non-economic damages,

the precise details of which will be established at trial.

//

//

## VIII.   PRAYER FOR RELIEF

8.1   WHEREFORE, having fully identified the injuries and damages sustained by the Plaintiffs and the legal duties breached by the Defendant that were the direct and proximate cause of those injuries and damages, the Plaintiffs pray for the following relief:

a. Judgment against the above-named Defendant in an amount sufficient to fully compensate the Plaintiffs for all damages established in this complaint which are proven at trial;

b. An award against the same Defendant for attorney's fees and statutory costs incurred in the filing of this action to the fullest extent permitted under relevant Washington law;

c. An award of prejudgment and post-judgment interest to the fullest extent permitted under relevant Washington law; and

d. Such other and further relief as this Court deems just and equitable.

RESPECTFULLY SUBMITTED this 3rd day of January, 2018.

CROSS BORDER LAW

_[signature]_

_____
Joseph Gehrke, WSBA No. 47474
Attorney for Plaintiffs